# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:17-CR-00132-MOC-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CARLIN WOODS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release, brought pursuant to 18 U.S.C. § 3582(c)(1)(A). Doc. No. 43. Defendant seeks release based on the COVID-19 pandemic, asserting his medical conditions place him at an increased risk of death or serious illness from the virus while incarcerated. As explained below, the motion is denied.

## I. BACKGROUND

On May 15, 2017, Defendant pleaded guilty to: wire fraud, in violation of 18 U.S.C. § 1343; conspiring to commit wire and mail fraud, in violation of 18 U.S.C. § 1349; and conspiring to commit money laundering, in violation of 18 U.S.C. § 1956. Doc. Nos. 1, 29; see United States v. Carlin Woods, No. 3:15-cr-00213 (W.D.N.C.). The United States Probation Office prepared a presentence investigation report to assist the Court at sentencing. Doc. No. 12. As relevant here, the Court adopted the report in imposing its sentence. Doc. No. 30.

The report adopted the factual basis from Defendant's plea agreement, which carefully detailed the nature and the circumstances of the offenses leading to Defendant's guilty plea. Beginning in at least June 2012 and continuing intermittently through about March 2014, Defendant participated in and facilitated a number of sweepstakes telemarketing call centers, which were located in Costa Rica and which operated for the purpose of defrauding United States

1

residents.  Doc. No. 12 at 5.  To further the conspiracy, Defendant and co-conspirators telephoned victims from those centers, falsely informing them that they had won second prize in a lottery sweepstakes, which entitled them to an award between $350,000 and $450,000.  Id. at 6.  Of course, there was a catch: Defendant and co-conspirators would tell the victims they had to pay "refundable insurance fees" through Western Union, a MoneyGram, or a postal money order to obtain the prize.  Id.  If victims paid the "fee," they would continue to call the victim, representing that a mistake was made and that the victim had actually won first prize in excess of $3 million.  Id.  They would continue calling victims until they were unwilling to pay.  Id.  Defendant and his co-conspirators kept the funds and did not provide any prizes to victims.  Id. at 7.  Ultimately, the Court found the Defendant responsible for $2,972,569.69 in restitution.  Doc. No. 38 at 6.

At sentencing, based on the nature of the offense and Defendant's criminal history, the Court found that Defendant's Total Offense Level was 27, Criminal History Category was I, and his Guidelines imprisonment range was 70 to 87 months.  Doc. No. 30 at 1.  Still, the Court varied below the Guidelines, imposing a concurrent sentence of 63 months on all counts.  Doc. No. 29.  Defendant was sentenced on August 20, 2019 and was placed in custody on October 10, 2019, when he self-surrendered to FCI Elkton.  Doc. No. 47.  At present, he has served about 15% of his sentence, with a projected release date of March 30, 2024.  Id.

On July 02, 2020, Defendant filed the instant motion, seeking compassionate release from prison based on the COVID-19 pandemic.  See Doc. No. 43.  In support, he maintains that his health conditions—hypertension, sleep apnea, a fistula requiring surgery, and morbid obesity—render him especially vulnerable to COVID-19.  See id. at 3.  Defendant is especially concerned because prison facilities are uniquely susceptible to an outbreak of COVID-19.  Id. at 1.  Indeed, FCI Elkton itself has approximately one thousand positive COVID-19 cases among inmates.  Doc.

No. 48 at 1.  Next, Defendant asserts his "conduct while incarcerated" demonstrates "that he no longer poses a threat to public safety and that granting him compassionate release would not endanger the community."  Doc. No. 43 at 16.   Lastly, he states the sentencing factors under 18 U.S.C. § 3553(a) warrant a reduction, as he played a minor rule in the telemarketing scheme and the "serious risk" from the COVID-19 pandemic "was not present at the time of sentencing."  Id.

The Government responded, asserting that Defendant should not receive compassionate release for two reasons.  First, Defendant failed to offer "extraordinary and compelling reasons" warranting a sentence reduction under 18 U.S.C. § 3582(c).  Doc. No. 47 at 8–12.  Of note, the Bureau has taken extraordinary measures to mitigate the risk of COVID-19 transmission in prison facilities.  See id. at 10.  And Defendant has not shown that his condition "substantially diminishes his ability to provide self care in a correctional facility."  Id. at 11.

Second, assuming these facts could present an "extraordinary and compelling reason" warranting a sentence reduction, the Government next asserts that the § 3553(a) factors militate against such compassionate release.  See id. at 12–13.  In particular, Defendant "participated in a massive telemarketing scheme fraud by which he and his co-conspirators deprived innocent victims, many of whom were elderly, out of millions of dollars."  Id. at 12.  Release after serving only 15% of a 63-month term of imprisonment "would not reflect the seriousness of his offenses, promote respect for the law, or provide just punishment for his crimes."  Id. at 13.

## II. ANALYSIS

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  As relevant here, the applicable policy statement provides that the Court "may reduce a term of imprisonment

. . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the Court determines that" (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; see United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020).

Here, the Court has considered the state of the COVID-19 pandemic—both generally and within Defendant's place of imprisonment—Defendant's criminal history, his disciplinary record while imprisoned, and his age and medical conditions. On balance, the weight of this evidence and the § 3553(a) factors counsel against release at this time. As explained by the Government—and as expressly adopted here—Defendant failed to present an "extraordinary and compelling reasons" warranting a reduction. See Doc. No. 47 at 8–12. And, even assuming Defendant did present such a reason, the § 3553(a) factors weigh against release at this time. See id. at 12–13. Thus, the Court declines to order compassionate release.[1]

---

[1] Defendant also asks the Court to modify his sentence to place him in home detention. Even if the Court could fashion such relief, the Court declines to do so for reasons stated above.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release, Doc. No. 43, is **DENIED**.

Signed: August 10, 2020

Max O. Cogburn Jr.
United States District Judge